UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LORRAINE BEELER, | ) | |
| LARRY MACDONALD, | ) | |
| DARLENE MACDONALD, | ) | |
| GORDON KEMP, | ) | |
| JUDY KEMP, | ) | No. 1:15-cv-01481-SEB-MJD |
| DOUGLAS STOKES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' *Motion to Dismiss or, In the Alternative, For Summary Judgment*. [Dkt. 39.] On August 19, 2016, District Judge Sarah Evans Barker designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 61.] For the reasons set forth below, the Magistrate Judge recommends Defendants' motion be **DENIED**.

**I.   Background**

Plaintiffs are citizens or residents of Canada who are eligible to receive retirement benefits under both the Social Security Act ("SSA") and the Canadian Pension Plan ("CPP") or the Quebec Pension Plan ("QPP"). Based upon Plaintiffs' receipt of either CPP or QPP benefits, Defendants applied the SSA's Windfall Elimination Provision ("WEP") to reduce Plaintiffs' SSA benefits. In this action, Plaintiffs assert the reduction of benefits violates the WEP statute and the regulations implementing the WEP. Plaintiffs further assert that Defendants' application

1

of the WEP to Canadian-American beneficiaries violates the totalization agreement between the two countries.

Defendants now seek dismissal of Plaintiffs' claims, arguing that the Court lacks jurisdiction because Plaintiffs failed to exhaust their administrative remedies as required by 42 U.S.C. § 405(g). Defendants seek dismissal for lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, Defendants seek summary judgment pursuant to Rule 56. The Seventh Circuit finds that whether a plaintiff has exhausted her administrative remedies, though a prerequisite to suit, does not implicate federal subject matter jurisdiction and is better addressed under Rule 12(b)(6) than Rule 12(b)(1). *See Mosley v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006) (wherein the Court described the exhaustion requirement as "a claims processing rule … lack of exhaustion usually is waivable, as lack of jurisdiction is not."). However, because Defendants have presented evidence outside the pleadings, the Court will treat the motion as a Rule 56 motion for summary judgment pursuant to Rule 12(d). Fed. R. Civ. P. 12(d).

## II.  Legal Standard

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.,* 641 F.3d 253, 256 (7th Cir. 2011). To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v.*

*Preferred Technical Grp.,* 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the Court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

### III. Facts

There are six named plaintiffs in this proposed class action. Each plaintiff applied for, and is receiving, SSA benefits. Each plaintiff also is receiving retirement benefits from a Canadian social insurance program. The SSA applied the WEP to reduce each plaintiffs' benefits. While some Plaintiffs took various steps to dispute the application of the WEP, none of the plaintiffs completed the administrative appeals process prior to filing this lawsuit.

#### A. Lorraine Beeler

Ms. Beeler worked in both Canada and the United States, making contributions both to the CPP and the SSA. In 2013, Ms. Beeler was awarded social security benefits in the amount of $512 per month. The SSA notified Ms. Beeler that her monthly benefit was reduced under the WEP because she also receives benefits under the CPP. Ms. Beeler sought reconsideration of the SSA's initial determination. The SSA affirmed its prior decision. Ms. Beeler then sought a hearing before an administrative law judge, who also affirmed the SSA's determination that her monthly benefits should be reduced by the WEP. Ms. Beeler requested Appeals Council review of the ALJ's decision on October 29, 2015. To date, the Appeals Council has not issued a decision.

### B. Larry MacDonald

Mr. MacDonald also worked in both the United States and Canada, making contributions to both countries' social security programs. Mr. MacDonald began receiving social security benefits in the amount of $1,408 per month in 2012. The SSA notified Mr. MacDonald that his benefits had been reduced under the WEP due to his receipt of CPP benefits, which began in 2011. Mr. MacDonald requested reconsideration of the SSA's initial determination. The SSA affirmed its prior decision, explaining that his CPP pension reduced his social security benefits. Mr. MacDonald did not request an ALJ hearing or seek review from the Appeals Council.

### C. Darlene MacDonald

Ms. MacDonald worked in both the United States and Canada, making contributions to both countries' social security programs. Ms. MacDonald began receiving social security benefits in the amount of $442 per month in 2013.[1] Her benefits also were reduced by application of the WEP. Ms. MacDonald did not request reconsideration of the SSA's initial determination.

### D. Gordon Kemp

Mr. Kemp worked in both the United States and Canada, making contributions to both countries' social security programs. Mr. Kemp began receiving social security benefits in the amount of $732 per month in 2006.[2] His benefits were reduced by application of the WEP. Mr. Kemp requested reconsideration of the SSA's initial determination. The SSA affirmed its prior decision to apply the WEP.

---

[1] The date upon which Ms. MacDonald began receiving social security benefits may be disputed as the Second Amended Complaint indicates she began receiving benefits in 2011. However, the precise date is not material to the resolution of this motion. The Court cites the date from the Notice of Award attached as an exhibit to Defendants' motion.

[2] The date upon which Mr. Kemp began receiving social security benefits may be disputed as the Second Amended Complaint indicates he began receiving benefits in 2005. However, the precise date is not material to the resolution of this motion. The Court cites the date from the Notice of Award attached as an exhibit to Defendants' motion.

### E. Judith Kemp

Ms. Kemp worked in private employment in Canada for twenty years prior to moving to the United States in 1994. While working in Canada, Ms. Kemp made contributions to both the CPP and QPP. In 2007, Ms. Kemp filed an application for Wife's Insurance Benefits with the SSA. Her application was approved and she began receiving benefits in the amount of $265 per month in 2007.[3] Ms. Kemp's SSA benefits were reduced by the WEP. She sought reconsideration of the SSA's initial determination and the SSA affirmed its decision to apply the WEP.[4]

### F. Douglas Stokes

Mr. Stokes worked in both the United States and Canada, making contributions to both countries' social security programs. Mr. Stokes began receiving social security benefits in 2008. His benefits were reduced by application of the WEP. Mr. Stokes requested reconsideration of the SSA's initial determination. The SSA affirmed its prior decision to apply the WEP.[5]

## IV. Discussion

Defendants argue the Court lacks jurisdiction over this action because Plaintiffs have not obtained a "final decision" from the Commissioner as required by 42 U.S.C. § 405(g). It is true that none of the named plaintiffs completed the administrative appeals process prior to filing this lawsuit. The "final decision" requirement, however, consists of two elements: (1) a non-waivable requirement that a claim for benefits be filed with the Commissioner; and (2) a

---

[3] The date upon which Ms. Kemp began receiving social security benefits may be disputed as the Second Amended Complaint indicates she began receiving benefits in 2006. However, the precise date is not material to the resolution of this motion. The Court cites the date from the Notice of Award attached as an exhibit to Defendants' motion.

[4] Whether Ms. Kemp sought reconsideration from the SSA appears to be disputed. However, the issue is not material to the resolution of this motion.

[5] Whether Mr. Stokes sought reconsideration from the SSA may be disputed. Defendants note that Plaintiffs failed to provide them with Mr. Stokes social security number and therefore Defendants were unable to locate his administrative record. As noted previously, this issue is not material to the resolution of this motion.

waivable requirement that a claimant exhaust administrative remedies before seeking judicial review. *See Johnson v. Sullivan*, 922 F.2d 346, 352 (7th Cir. 1991). There is no dispute that each named Plaintiff has fulfilled the non-waivable requirement. The issue before the Court is whether judicial waiver of the exhaustion requirement is appropriate in this case.  Three factors influence a court's decision to find waiver: (1) whether exhaustion would be futile; (2) whether the claim is collateral to a demand for benefits; and (3) whether a plaintiff would suffer irreparable harm if required to move through the administrative procedure before obtaining relief.  *See Mathews v. Eldridge,* 424 U.S. 319, 330 (1976). The Court will address each factor in turn below.

### A. Exhaustion is Futile

Plaintiffs assert it would be futile for the Court to require them to exhaust their administrative remedies because the SSA is "committed to a policy of applying the WEP reduction to the proposed Plaintiff class and, in doing so, misconstrues the relevant statutes, regulations, and the Bilateral Agreement." [Dkt. 44 at 10.]  The Seventh Circuit has held that "[w]aiver [of administrative remedies] ... is appropriate where the pursuit of administrative remedies would be futile because the Secretary's position on the statutory issues is 'final.'" *Johnson v. Heckler*, 769 F.2d 1202, 1207 (7th Cir. 1985) (quoting *Kuehner v. Schweiker*, 717 F.2d 813, 817 (3d Cir. 1983)) (subsequent history and other citations omitted). In concluding that the plaintiffs had demonstrated such futility, the *Heckler* court adopted the reasoning of the district court below:

> [t]he experience of the two named plaintiffs, who did exhaust, illustrates the futility of exhaustion—the Secretary's published policies are not likely to be influenced or changed by the administrative appeals of any single individual; thus the issue is unsuited to resolution in the hearing process. That the challenged policies are published both in the federal regulations and in Social Security Rulings further suggests the final nature of the Secretary's position. Finally, the validity of the policies challenged here has been raised in other litigation, giving the Secretary an ample opportunity to reconsider [but] she has not done so.

*Id.* at 1208 (quoting *Johnson v. Heckler*, 100 F.R.D. 70, 74 (N.D. Ill. 1983)).

Here, Plaintiffs assert that exhausting administrative remedies would be similarly futile because the SSA consistently misapplies the WEP to Canadian-American beneficiaries. *See Andre v. Chater*, 910 F. Supp. 1352, 1358-59 (S.D. Ind. 1995). The root of the misapplication of the WEP, Plaintiffs argue, is the following guidance set forth in the SSA's Program Operations Manual System ("POMS")[6]: "Payments made under the Canada Pension Plan (CPP) and Quebec Pension Plan (QPP) are earnings-based and are subject to WEP offset." [Dkt. 33 at ¶22.] In this action, Plaintiffs seek to have the Court declare this internal policy unlawful and enjoin its enforcement. As long as the POMS policy is in place, however, continuing to appeal its application to the SSA is futile.

Defendants disagree, arguing that a demonstration of futility must show that the defendant is "powerless" to grant plaintiffs' request as opposed to merely unlikely do so. [Dkt. 46 at 2.] Defendants cite two Seventh Circuit cases in support of this argument; however, in each of those cases the Court was upholding the district court's decision to require exhaustion on facts readily distinguishable from those here.[7] Noting that the decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court, in each case the Court found the district courts had not abused their discretion. Plaintiffs, on the other hand, note district court decisions that found futility based on facts quite similar to those here. For example, in *Hall v. Sebelius*, the plaintiffs challenged an internal policy set forth in POMS that they

---

[6] POMS is a handbook for internal use by SSA employees and has no binding legal effect. *See Parker for Lamon v. Sullivan*, 891 F.2d 185, 190 (7th Cir. 1989).

[7] In *Shawnee Trail Conservancy v. U.S. Dept. of Agriculture*, plaintiffs argued that defendants were bound by a pre-existing settlement agreement from changing the designations plaintiffs' challenged thereby making any administrative appeal futile. 222 F.3d 383, 389 (7th Cir. 2000); In *Smith v. Blue Cross & Blue Shield of Wis.*, the plaintiffs presented no argument as to why they believed the ERISA review procedure was futile. 959 F.2d 655, 659 (7th Cir. 1992).

7

asserted required them to accept Medicare Part A as a condition of receipt of their monthly social security benefits. 689 F.Supp.2d 10, 15 (D.D.C. 2009). As in our case, none of the plaintiffs exhausted the administrative process prior to filing suit. However, the court waived the exhaustion requirement noting that exhaustion is futile where an agency has adopted a policy or practice that is contrary to law. *Hall*, 689 F.Supp.2d at 24. *See also Davis v. Astrue*, 513 F.Supp.2d 1137, 1146 (N.D. Cal. 2007).

The Court finds Plaintiffs here are asserting a similar challenge. They challenge the SSA's policy, as stated in POMS, that Canadian social security payments are earnings-based and subject to a WEP offset. As in *Johnson v. Heckler*, it is unlikely the SSA would alter its published policy based upon the administrative appeal of any single individual.

Additionally, the Seventh Circuit has found that futility may be excused due to "unreasonable delay or an indefinite timeframe for administrative action." *Iddir v. Immigration & Naturalization Serv.,* 301 F.3d 492, 498 (7th Cir. 2002). Ms. Beeler initiated the administrative appeals process on December 15, 2013, nearly three years ago. [Dkt. 39-1 at 3.] Her request for review of the ALJ's decision has been pending before the Appeals Council for more than ten months--since October 29, 2015. *Id*. Ms. Beeler has no way of knowing when the Appeals Council may issue a decision and has waited nearly three years for a resolution. Viewing the facts in the light most favorable to Plaintiffs (and mindful that the merits of this action are not at issue in this Motion), it would be futile to require strict compliance with the administrative process for an "indefinite timeframe" in the face of the POMS policy. Therefore, the Court concludes that the futility factor weighs in favor of waiving the exhaustion of administrative remedies requirement.

### B. Collateral Claims

A claim may be collateral to a plaintiff's demand for benefits where (1) it facially challenges an agency policy and (2) the court's "holding regarding the validity of that policy stands independent of the ultimate merits of [a] plaintiff's claim for benefits." *Marcus v. Sullivan,* 926 F.2d 604, 614 (7th Cir.1991). Plaintiffs assert their facial challenge to the POMS policy is collateral to their substantive claims for entitlement. The SSA has already determined Plaintiffs are eligible for social security benefits, Plaintiffs note. At issue is the propriety of applying the WEP reduction, not entitlement to benefits. Plaintiffs cite *Johnson v. Sullivan*, wherein the plaintiffs challenged the SSA's policy of not considering non-severe impairments in combination when determining disability. 922 F.2d 346 (7th Cir. 1991). The Seventh Circuit held in that case that the plaintiffs were entitled to waiver of the exhaustion requirement because they were attacking the policy itself, not its application to plaintiffs or the ultimate determination of benefits. "Their challenge to the policy rises and falls on its own, separate from the merits of their claims for benefits." *Id.* at 353. Such a collateral attack weighed in favor of waiving the exhaustion requirement.

Defendants maintain Plaintiffs claims are not collateral, but "inextricably intertwined" with their claims for benefits, and disagree with Plaintiffs' interpretation of *Johnson*. Defendants point out that the Seventh Circuit's ruling in *Johnson* meant that the combined effects of claimants' non-severe impairments could be considered in the SSA's step 2 analysis, but did not guarantee any increase in benefits for the plaintiffs. Here, Defendants argue, if the Plaintiffs succeed on the merits in this litigation, the Court would, "in effect, be awarding Plaintiffs additional benefits" thus intertwining their claims in the litigation with their claims for entitlement. [Dkt. 46 at 7.] The Court disagrees with Defendants' reasoning. Plaintiffs'

9

entitlement to a gross amount of social security benefits has already been determined by the SSA based upon the contributions of each plaintiff. At issue in the litigation is whether it is lawful to apply the WEP to that gross amount, thereby reducing the net amount received. The Court's decision will have no impact on the pre-determined gross amount to which each Plaintiff is entitled. A decision may impact the *net* amount a plaintiff receives depending upon whether or not the WEP is applied; however, the gross amount remains the same.

The Seventh Circuit advised in *Johnson* that the question to consider is whether the plaintiffs' challenge to the SSA's policy is "bound up with the merits so closely that our decision would constitute interference with agency process." *Johnson*, 922 F.2d at 353 (internal citation omitted). But here the merits of each individual Plaintiff's claim for benefits have already been addressed. The Court finds Plaintiffs' challenge to the POMS policy to apply the WEP to the retirement benefits of Canadian-Americans is sufficiently collateral to warrant judicial waiver of the exhaustion requirement.

    C. **Irreparable Harm**

Finally, Plaintiffs assert they will suffer irreparable harm if they must exhaust their administrative remedies before seeking judicial review. Citing *Marcus*, Plaintiffs argue that any delayed receipt of benefits cannot suffice to make them whole. "Any delay potentially subjects claimants to deteriorating health, and even death. Claimants need to receive funds promptly because they use their benefits to purchase the very necessities of life." *Marcus* 926 F.2d at 614. Defendants note that unlike the plaintiffs in *Marcus* who had been denied benefits, Plaintiffs in this case are receiving benefits, albeit reduced by the application of the WEP. Further mitigating Plaintiffs' assertion of irreparable harm, Defendants argue, only Ms. Beeler continued to press the issue before the SSA by pursuing the appeals process to the Appeals Council. "Were

Plaintiffs actually facing irreparable harm as they suggest, one would expect them to have raised this issue long ago." [Dkt. 46 at 9.]

Irreparable harm exists where "deferment of judicial review until exhaustion of administrative remedies would cause [plaintiffs] injury that cannot be remedied by later payment of the benefits requested." *Martin v. Shalala,* 63 F.3d 497, 505 (7th Cir. 1995).  While Plaintiffs generally pleaded irreparable harm in the Second Amended Complaint, only Ms. Beeler submitted an affidavit in the briefing of this motion detailing the harm caused by the reduction in her social security benefits. The Court agrees with Defendants to the extent that Plaintiffs' showing of irreparable harm is not as strong as the first two factors of the waiver test discussed above.  However, the Court also notes the United States Supreme Court has consistently advised that application of the waiver factors should be "intensely practical" and the decision whether to waive should "not be made solely by mechanical application of the *Eldridge* factors but should also be guided by the policies underlying the exhaustion requirement." *Bowen v. City of New York,* 476 U.S. 467, 484 (1986) (citation and internal quotation marks omitted). If the purposes of exhaustion, which include allowing the agency to correct its own errors, fostering the compilation of an adequate record, and affording the parties the benefit of the agency's expertise, are not served by requiring class members to exhaust, waiver is favored. *See Weinberger v. Salfi,* 422 U.S. 749, 765 (1975).

Evaluating the irreparable harm factor through an "intensely practical" lens, the Court notes that Plaintiffs pleaded that as SSA retirement beneficiaries, they "face a greater likelihood of mortality while awaiting resolution of the lengthy administrative determination of their claims."  As retired individuals, Plaintiffs live on a fixed income and it is reasonable to believe that, as Ms. Beeler testified in her affidavit, this allegedly unlawful reduction in benefits would

11

cause irreparable harm to their ability to make ends meet. Although Defendants assert the "alleged errors are fully correctable upon subsequent administrative review," Ms. Beeler has waited nearly three years for Defendants to complete their review of her case. [Dkt. 40 at 16.] Accordingly, this factor also weighs in favor of waiving the exhaustion requirement.

## V.     Conclusion

Based on the foregoing, the Magistrate Judge recommends the Court waive the exhaustion requirement and allow this action to proceed on its merits. Consequently, the Magistrate Judge recommends Defendants' *Motion to Dismiss Or, In the Alternative, For Summary Judgment* be **DENIED**. [Dkt. 39.]  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  31 AUG 2016

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Jonathan Mark Bruce
bruce@jonathanbrucelaw.com

Aaron M. Bernay
FROST BROWN TODD LLC
abernay@fbtlaw.com

Darren Andrew Craig
FROST BROWN TODD LLC
dcraig@fbtlaw.com

Joseph J. Dehner
FROST BROWN TODD LLC
jdehner@fbtlaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov